### 9943

### LOVELAND *ET AL.* v. COLLINS.

#### (96 S. E. 124.)

1. APPEAL AND ERROR — REVIEW — HARMLESS ERROR — INSTRUCTIONS.— An instruction as to *prima facie* consideration for note under Negotiable Instruments Act (28 St. at Large, p. 668), in an action on note executed before act took effect, is harmless, where there was no dispute as to consideration.

2. APPEAL AND ERROR—ERROR FAVORABLE TO APPELLANTS.—An instruction as to *prima facie* consideration for note under Negotiable Instruments Act, in an action on note executed before act took effect, was favorable to plaintiff, and will not be considered as an error on appeal taken by plaintiff.

3. TRIAL—INSTRUCTION—PROVINCE OF COURT—CHARGE ON THE FACTS.— An instruction on effect of partial failure of consideration for note, worded, "If it has the effect of depriving substantially the party of the benefit or advantage with regard to which he has contracted, the failure of a part would amount to a failure of the whole," is not a charge on the weight of evidence.

4. NEW TRIAL—NEWLY DISCOVERED EVIDENCE.—Where the evidence on which motion for new trial was based consisted of correspondence, which could have been produced during trial, it did not warrant new trial.

5. APPEAL AND ERROR—REVIEW—FINDING OF FACT.—Where a jury finding is supported by evidence, it will not be reviewed on appeal.

6. NEW TRIAL — NEWLY DISCOVERED EVIDENCE — MATERIALITY.—Newly discovered evidence that is not material and will not affect result does not warrant new trial.

7. SALES—GUARANTY—RIGHTS OF BUYER.—Where merchant buys certain goods upon sellers guaranteeing amount of sales, he cannot recover on such guaranty without paying purchase price notes.

Before SMITH, J., Richland, Summer term, 1917. Reversed *nisi.*

Action by Theodore O. Loveland and others doing business as Brenard Manufacturing Company against N. H. Collins. Judgment for defendant, and plaintiffs appeal. Affirmed on entry of remittitur; otherwise reversed.

*Mr. John D. Lee,* for appellant, submits: *The negotiable law is inapplicable:* LXXVIII Stats. 668-696. *As to charge on facts:* State Constitution, art. V, sec. 26; 81 S. C. 546, 552; 91 S. C. 202; 105 S. C. 55. *As to construction of contract:* 14 S. C. 162-165; 78 S. C. 5; 81 S. C. 226; 102 S. C. 227, 242; 104 S. C. 378. *Verdict was wholly unsupported by evidence:* 101 S. C. 429; 103 S. C. 104, 117; 101 S. C. 207. *Verdict was capricious:* 103 S. C. 117. *As to after-discovered evidence:* 87 S. C. 152, 157; 33 S. C. 403; 12 S. E. 8; 106 S. C. 437, 440.

*Mr. R. B. Herbert,* for respondent, submits: *Appellant's exception does not set out in respect the portion of the Judge's charge, referring to the Negotiable Instruments Act, was prejudicial and the Supreme Court will not consider it:* 57 S. E. 201; 76 S. C. 382. *As to Court disregarding general exception:* 85 S. E. 229; 101 S. C. 64.

March 28, 1918.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

On February 17, 1914, defendant, who is a merchant, gave plaintiffs the following order for an advertising proposition:

"Gentlemen: On your approval of this order, deliver to me at your earliest convenience, f. o. b. factory or distributing point, the de luxe grafanola, sewing machine, watches, silverware and advertising matter described on this and reverse side, in payment for which I agree to pay you $400 as per terms stated below. My last twelve months sales were $26,000. My next twelve months sales to be $32,000, and if 1¼ per cent. of my gross sales does not amount to four hundred ($400) dollars for the next twelve months you will pay me the deficiency in cash, and send your bond for $400 to cover this agreement with me. To make the last above clause binding upon you I agree to take the shipments promptly, carry out the contest plan, pay account as per terms below, keep the de luxe grafanola and other articles listed below well displayed in my store, issue votes for each cent purchased and every sixty days of this contract to report to you my gross sales, and promptly furnish you all information you request to enable you to assist in pushing the contest. (Here follows a statement of terms of payment, and a list of articles to be used in contest as premiums.)"

In settlement of the price of the contract, defendant gave plaintiffs six notes of even date therewith, aggregating $400, and maturing from two to seven months after date, with interest after maturity at 6 per cent. The notes were all paid, except two, and on these plaintiffs sued, alleging a balance due on one of $50.05 (though plaintiffs' evidence showed a balance of only $40.05), and the full amount of the other, $70, with interest on each from the maturity thereof, the one 5 and the other 7 months after date. Defendant admitted the execution of the notes, and that the amounts

sued for were unpaid, but alleged that they had been obtained by fraud, and that the consideration thereof had failed, because plaintiffs failed to send him some of the goods mentioned, and the bond they agreed to give, and also failed to make good their guaranty as to the amount of his sales; and for a counterclaim he alleges the contract as to the amount of his sales, that 1¼ per cent. thereof was only $150, and that plaintiffs owned him $250, for the deficiency under their contract, and that "defendant is entitled to have the amount unpaid on said notes credited against said $250, and the balance paid to him," and he prayed for judgment accordingly.   Plaintiffs replied, admitting the contract, but alleging that it had been obtained by fraud and false representation of defendant as to the amount of his sales for the 12 months preceding the contract, and that defendant had not complied with certain provisions of the last paragraph of the contract as above set forth, specifically stating them. Plaintiffs' testimony tended to prove compliance with the contract on their part, and failure of defendant to comply with some of the provisions of the paragraph of the contract above referred to—particularly as to reporting his gross sales.   Defendant's testimony tended to prove compliance with the contract on his part, and the failure of plaintiffs to send him the bond which they had agreed to give him, and part of the goods mentioned, and also to give him proper instructions for carrying out the advertising scheme. Defendant testified: That he had never received the bond, though he had written to plaintiffs for it.   That they had never notified him they had sent it to the National Loan & Exchange Bank for him, but that the cashier of that bank had told him: "There is a bond here, and it looks like you ought to have it.   They sent it to us, but it looks like you ought to have it."   That he asked the cashier about it, and was told that it had been sent back for correction; that it was not there, or they could find it.   The jury found a verdict for defendant for $238.75 with interest at 6 per cent.

for 2 years and six months, amounting to $35.80, making $274.55. On motion for new trial, defendant remitted the interest, because interest had not ben asked for, and the trial Judge allowed the verdict so rendered to stand. From judgment thereon, plaintiffs appealed.

Plaintiffs contend that the Court committed prejudicial error in charging that, under the Negotiable Instruments Act (28 St. at Large, p. 668), every negotiable instrument is deemed *prima facie* to have been issued for a consideration. All parties and the Court seem to have overlooked the fact that the notes sued on were given before the act became effective. But the oversight was immaterial, and the charge was not prejudicial to plaintiffs, because there was no dispute about the consideration of the notes. Both parties agreed in allegation and evidence as to what the notes were given for. Besides, as to that, the charge was more favorable to plaintiffs than to defendant, as it made the existence of the notes in their hands *prima facie* evidence of consideration.

On the subject of failure of consideration, the Court charged that ordinarily partial failure is a defense only *pro tanto,* but that the failure to deliver a part of an order might amount to a total failure of consideration, as where the part not delivered bears such relation to the part delivered that the other party to the contract is substantially deprived of the benefit or advantage for which he contracted. The Court illustrated the principle by referring to a case in which an order had been given for a show case and the things to be exhibited therein, neither being of any advantage to the purchaser without the other. This is complained of as a charge on the facts, in that the illustration gave the jury an intimation of the opinion of the Court that the failure to deliver part of the goods in this case deprived defendant of the benefit or advantage for which he had contracted. But the objection is not well·taken. There is nothing ·in the instruction or illustration which gave any

intimation or warranted any inference as to what was the Judge's opinion as to the facts in this case. The chief objection is to this statement:

"If it (meaning failure to deliver a part) has the effect of depriving substantially the party of the benefit or advantage with regard to which he has contracted, the failure of a part would amount to a failure of the whole."

It will be seen that the premise was stated hypothetically, so that it was left to the jury to decide whether it was true, and, therefore, whether the principle stated and illustrated was applicable to the facts as they found them. If the hypothesis stated was true, the conclusion followed as matter of law.

The contention that the Court erred in limiting the construction of the contract to one part of it is not sustained by the record, which shows that the Court specifically referred to the provisions of the contract set out in plaintiffs' reply to the counterclaim, and told the jury that, if the plaintiffs had been induced by misrepresentation, as to the previous year's sales, to enter into the contract, and if defendant had failed to carry out the provisions of the contract in the particulars alleged in the reply, the counterclaim could not be sustained. In construing the contract, no phase of it was omitted to the plaintiffs' prejudice.

We have already stated the substance of defendant's testimony about the bond not having been delivered to him. Plaintiffs moved for a new trial on the correspondence between themselves and the bank about the bond and the affidavit of the cashier, identifying the letters, which showed that a bond in favor of W. H. Collins had been sent to the bank on February 20th, without any instructions what to do with it; that it was returned to plaintiffs for correction and instructions; that plaintiffs returned it to the bank corrected on the 28th, saying that it had been sent to the bank at defendant's request, and instructing the bank to call his attention to the receipt of it, and either turn it over to him,

or hold it for him, according to his desires, and a letter from the cashier to plaintiffs, of March 4th, acknowledging receipt of it and saying: "We are handing him the bond in accordance with your letter." But the cashier did not swear in his affidavit that he ever delivered the bond to defendant. On the other hand, defendant in his affidavit reaffirmed his testimony on the trial that it was never delivered to him. The motion was properly refused. The evidence was not after discovered, in the legal sense. It was only after thought of. The answer made an issue about delivery of the bond. Plaintiffs had knowledge of the facts with regard to the bond before trial, and could as easily have produced the correspondence then as after the trial. The Court, therefore, properly held plaintiffs lacking in diligence, a finding of fact in a law case, supported by evidence, and, therefore, not reviewable here. Moreover, the alleged after-discovered evidence was not material, or upon a material issue, and there is no reason to believe that it would have affected the result.

The only other ground argued is that the Court erred in refusing to grant a new trial on the ground that the verdict was excessive, being even for a greater amount in favor of defendant than he claimed in his answer. This ground is well taken. As already stated, defendant admitted the notes and the amount due thereon, and after setting up his counterclaim for the deficiency of the guaranty of $400, he says the amount due on the notes ought to be credited on the deficiency claimed by him, to wit, $250, and the balance paid to him. But evidently the jury did not credit the counterclaim with the amount admitted by defendant to be due to plaintiffs. Defendant's counterclaim was based upon the contract. Therefore he must stand by the contract and do what it requires of him; that is, pay his notes. He cannot have relief under it, and at the same time repudiate it. Besides, the evidence did not warrant repudiation of the contract by either party. There-

fore the defendant must give plaintiffs credit on the verdict and judgment in his favor for the amount due on the notes at date of verdict, or take a new trial. It is, therefore, the judgment of this Court that the judgment of the Circuit Court be reversed, and a new trial had, unless, within 20 days after notice of the filing of the remittitur in the Circuit Court, the defendant remit on the record the amount due on the notes sued on at the date of the verdict; but, if said remittitur be entered, then, it is the judgment of this Court that the judgment of the Circuit Court, so reduced in amount, be affirmed.

Reversed *nisi.*

MESSRS. JUSTICES WATTS, FRASER and GAGE concur.

MR. CHIEF JUSTICE GARY did not sit.